# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

M2M SOLUTIONS LLC,
a Delaware limited liability company,

        Plaintiff,

    v.

AMAZON.COM, INC.,
a Delaware corporation,

        Defendant.

C.A. No. 18-1532-LPS-CJB

## ANSWERING BRIEF OF PLAINTIFF M2M SOLUTIONS LLC IN OPPOSITION TO DEFENDANT AMAZON.COM, INC.'S MOTION TO STAY PENDING *INTER PARTES* REVIEW

August 7, 2019

OF COUNSEL:

CANTOR COLBURN LLP

Marc N. Henschke
20 Church Street, 22nd Floor
Hartford, Connecticut 06103
(860) 286-2929
MHenschke@cantorcolburn.com

BAYARD, P.A.

Stephen B. Brauerman (sb4952)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com

Attorneys for Plaintiff
M2M SOLUTIONS LLC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   SUMMARY OF ARGUMENT ............................................................................. 2

III.  STATEMENT OF RELEVANT FACTUAL AND PROCEDURAL
      BACKGROUND ................................................................................................... 2

      A.    The Status Of The Present Action And Amazon's Recently Filed *Pre-
            Institution* '477/'989 IPRs ...................................................................... 2

      B.    The Status Of The Parties' Prior Related Case And Amazon's Related
            Case IPRs ................................................................................................... 4

      C.    M2M's Addition Of Significant New Limitations To The Claims Of The
            Patents-In-Suit Designed To Distinguish Over The Arguments And Art
            Relied Upon In Amazon's Related Case IPRs ......................................... 6

IV.   ARGUMENT ........................................................................................................ 8

      A.    Applicable Legal Standards Governing Stay Requests ......................... 8

            1.    The "Simplification" Stay Factor ................................................ 10

            2.    The "Status Of The Litigation" Stay Factor ............................. 12

            3.    The "Undue Prejudice" Stay Factor ........................................... 14

      B.    The Court Should Deny The Present Motion In Its Entirety Because
            Amazon Has Failed To Demonstrate That An Equitable Balancing Of The
            Stay Test Factors Would Support The Granting Of A Stay In Favor Of Its
            *Pre-Institution* IPR Petitions ................................................................. 15

            1.    Amazon Has Failed To Show That That The "Simplification" Stay
                  Factor Supports Granting A Stay In Favor Of Its *Pre-Institution*
                  IPR Petitions .............................................................................. 16

            2.    Amazon Has Failed To Show That The "Status Of The Litigation"
                  Stay Factor Supports Granting A Stay In Favor of Its *Pre-
                  Institution* IPR Petitions ........................................................... 19

            3.    Has Failed To Show That The "Undue Prejudice" Stay Factor
                  Supports Granting A Stay In Favor of Its *Pre-Institution* IPR
                  Petitions ...................................................................................... 20

V.    CONCLUSION .................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*454 Life Scis. Corp. v. Ion Torrent Sys.*,
 No. 15-595-LPS, 2016 U.S. Dist. LEXIS 153978 (D. Del. Nov. 7, 2016)...................... 12

*Advanced Microscopy Inc. v. Carl Zeiss Microscopy, LLC,*
 No. 15-516-LPS-CJB, 2016 U.S. Dist. LEXIS 17363 (D. Del. Feb. 11, 2016) ........ passim

*Copy Prot. LLC v. Netflix, Inc.,*
 No. 14-365-LPS, 2015 U.S. Dist. LEXIS 78270 (D. Del. June 17, 2015) ............... passim

*Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*,
 No. 14-1430-LPS-CJB, 2018 U.S. Dist. LEXIS 30209 (D. Del. Feb. 26, 2018) ....... 15, 20

*Ethicon LLC v. Intuitive Surgical, Inc.*,
 No. 17-871-LPS, 2019 U.S. LEXIS 45452 (D. Del. Mar. 20, 2019)............................... 14

*Expedia, Inc. et al., v. IBM Corp.,*
 2019 Pat. App. LEXIS 4307, Case IPR2019-00404 (PTAB June 25, 2019)................... 18

*Invensas Corp. v. Samsung Elecs. Co.*,
 No. 17-1363-MN-SRF, 2018 U.S. Dist. LEXIS 169999 (D. Del. Oct. 2, 2018)....... passim

*M2M Sols. v. Amazon.com, Inc.*,
 No. 17-202-LPS-CJB, 2017 U.S. Dist. LEXIS 203110 (D. Del. Dec. 11, 2017) .............. 5

*McRo, Inc. v. Bethesda Softworks LLC*,
 No. 12-1509-LPS-CJB, 2014 U.S. Dist. LEXIS 60313 (D. Del. May 1, 2014) ........ passim

*Nuvasive, Inc. v. Neurovision Med. Prods.*,
 No. 15-286-LPS-CJB, 2015 U.S. Dist. LEXIS 85894 (D. Del. June 23, 2015) ........ passim

*Pragmatus Mobile, LLC v. Amazon.com, Inc.,*
 No. 14-436-LPS, 2015 U.S. Dist. LEXIS 82256 (D. Del. June 17, 2015) ..... 10, 15, 16, 20

*Princeton Digital Image Corp. v. Konami Digital Entm't Inc.*,
 No. 12-1461-LPS-CJB, 2015 U.S. Dist. LEXIS 4234 (D. Del. Jan. 14, 2015) .......... 14, 20

*Princeton Digital Image Corp. v. Konami Entm't, Inc.*,
 No. 12-1461-LPS-CJB, 2014 U.S. Dist. LEXIS 61555 (D. Del. Jan. 15, 2014) .. 14, 16, 20

*R.J. Reynolds Vapor Co. v. Fontem Holdings, BV,*
 2018 Pat. App. LEXIS 5759, Case IPR2017-01642 (PTAB Jan. 16, 2018)..................... 18

*Sirona Dental Sys. GMBH v. Dental Wings, Inc.*,
      No. 14-460-LPS-CJB, 2016 U.S. Dist. LEXIS 155706 (D. Del. Mar. 22, 2016)... 9, 12, 14

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc*.,
      193 F. Supp. 3d 345 (D. Del. 2016) ................................................................ 15

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.,*
      No. 15-691-LPS-CJB, 2015 U.S. Dist. LEXIS 162866 (D. Del. Dec. 3, 2015) ........ passim

*TruePosition, Inc. v. Polaris Wireless, Inc.,*
      No. 12-646-RGA-MPT, 2013 U.S. Dist. LEXIS 150764 (D. Del. Oct. 21, 2013) ........... 12

*Universal Secure Registry, LLC v. Apple Inc.,*
      No. 17-585-CFC-SRF, 2018 U.S. Dist. LEXIS 159539 (D. Del. Sept. 19, 2018) .... passim

*Yodlee, Inc. v. Plaid Techs. Inc*.,
      No. 14-1445-LPS-CJB, 2017 U.S. Dist. LEXIS 11206 (Jan. 27, 2017) ...................... 8, 20

## **Other Authorities**

35 U.S.C. § 314(a) .......................................................................................... 18

35 U.S.C. § 314(b) ............................................................................................ 3

35 U.S.C. § 316(a)(11) ....................................................................................... 3

35 U.S.C. § 325(d) .......................................................................................... 18

37 C.F.R. § 42.100(b), 83 Fed. Reg. 51,340 (Oct. 11, 2018) ...................................... 18

PTAB Trial Practice Guide Update (July 2019) ........................................................ 18

I.    **INTRODUCTION**

    Plaintiff M2M Solutions LLC ("M2M') hereby submits its Answering Brief in opposition to the Opening Brief In Support Of Motion To Stay Pending *Inter Partes* Review ("Op. Br.") (D.I. 18) filed by Defendant Amazon.com, Inc. ("Amazon") on July 15, 2019.

    For all of the compelling reasons that it has been this Court's general policy over the past five years to routinely and consistently deny stay requests made in favor of *pre-institution* IPR petitions, that same sound result should apply here as well. Amazon argues for extraordinary treatment on grounds that its speculative assertion that the PTAB is "highly likely" to institute its recently filed petitions should effectively be treated as a matter of certainty. According to Amazon, this is because the Patents-In-Suit ostensibly are materially identical for invalidity purposes to earlier M2M patents on which IPR reviews were previously granted. But that contention is demonstrably false given that M2M has added significant new limitations to the claims of the Patents-In-Suit designed to successfully distinguish over the art cited in those prior IPRs. Amazon's attempt to exploit this Court's lack of familiarity with the IPR record on these points counsels for exactly why the better course is to wait for the more clearly developed record that will emerge with the PTAB's institution decisions in January 2020 before considering a stay.

    If anything, the facts that Amazon's new petitions are admittedly redundant of the prior IPRs, and that the Examiner expressly granted the Patents-In-Suit over all of those prior IPR materials, make it "highly likely" that the PTAB will exercise its discretion to *deny* institution.

    Here, the premature nature of Amazon's stay request implicates a prolonged stay lasting for 18 to 24 months or longer that would clearly be unduly prejudicial to M2M.  By contrast, Amazon has failed to articulate any appreciable hardship that it would suffer by having its stay request denied without prejudice at this time with leave to later renew after the PTAB's January 2020 institution decisions. Only a very modest slate of case events needs to occur before then.

1

## II.    SUMMARY OF ARGUMENT

As explained in detail below, the Court should deny in its entirety Amazon's present motion for a stay because Amazon has failed to carry its burden of demonstrating that an equitable balancing of the three factors that comprise the legal test for assessing stay requests in this district would support the granting of a stay at this premature juncture in favor of its recently filed *pre-institution* IPR petitions. Nor can Amazon articulate any clear hardship that it would purportedly suffer in the absence of a *pre-institution* stay which is recognized as an additional legal consideration that weighs against such relief. As this Court has repeatedly held over the past five years, the proper resolution of a *pre-institution* stay request such as the one that Amazon has made here is a denial without prejudice and with leave to renew after the PTAB has brought much greater clarity to the record by rendering its institution decisions in January 2020.

## III.    STATEMENT OF RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Status Of The Present Action And Amazon's Recently Filed *Pre-Institution* '477/'989 IPRs

On October 3, 2018, M2M filed its patent infringement Complaint against Amazon in the present action asserting two patents from its "Remote Asset Management" ("RMA") patent family -- *viz.,* U.S. Patent No. 9,961,477 (the "'477 patent") and U.S. Patent No. 10,038,989 (the "'989 patent") (collectively, the "Patents-In Suit"). (D.I. 1). Upon filing, M2M identified a prior pending patent infringement action between the parties, No. 1:17-cv-00202-LPS-CJB, as being a "Related Case" given that it involved three earlier-issued patents[1] from the RMA patent family directed to aspects of Amazon's same Kindle e-reader ecosystem accused herein (the "Related Case"). (*Id.*). On November 29, 2018, Amazon filed its Answer in the present action. (D.I. 10).

---

[1] Specifically, the three patents asserted by M2M in the prior Related Case are U.S. Patent Nos. 8,504,007 (the "'007 patent"); 8,577,358 (the "'358 patent"); and 8,577,359 (the "'359 patent") (collectively, the "Related Case patents").

On December 11, 2018 with case scheduling deadlines approaching, the parties jointly stipulated to stay the present action for a very short and circumscribed period of *approximately seven weeks or less* while awaiting Final Written Decisions ("FWDs") due from the PTAB by early February, 2019 that would resolve IPR petitions that Amazon had previously filed against the Related Case patents (the "Related Case IPRs;" discussed below). (D.I. 13). The parties' expressly stated purpose for this limited stay was that "should any of the claims asserted in the Related Case survive the IPR proceedings and resume being litigated, the schedules of the two actions should be coordinated or consolidated for at least pre-trial purposes." (*Id*. at p. 2). After the PTAB eventually issued its FWDs finding all claims of the Related Case patents to be unpatentable, on February 28, 2019, the parties stipulated to briefly extend the stay herein to allow M2M to file Requests for Rehearing which were due just eleven days later on March 11, 2019, and which the PTAB was expected to promptly rule upon. (D.I. 14). Once again, the parties' acknowledged purpose for this finite extension "was for the same reasons previously set forth in their prior Joint Stipulation" (*i.e*., D.I. 13). However, that purpose later became moot on June 6, 2019 when the PTAB denied M2M's Rehearing Requests, thereby ensuring that the two cases will *not* be moving forward together on parallel tracks.

Amazon waited over nine months to file two new IPR petitions on July 11, 2019 directed to all claims of the Patents-In-Suit -- *viz*., IPR2019-01204 ('477 patent) and IPR2019-01205 ('989 patent) (collectively, the "'477/'989 IPRs"). Per 35 U.S.C. § 314(b), the PTAB is required to render its institution decisions within approximately six months from now -- *i.e*., by late January, 2020. Per 35 U.S.C. § 316(a)(11), if one or both of the petitions get instituted, the '477/'989 IPRs will last for at least 18 months until the issuance of Final Written Decisions, and

perhaps as long as 24 months or more if the Director exercises his statutory discretion to extend the proceedings by six months, and/or if a party were to file any Request for Rehearing.

On July 22, 2019, the parties filed an agreed-to [Proposed] Joint Scheduling Order which is now pending before the Court. (D.I. 20-2). Under this schedule, the only case-related activities that the parties are presently required to undertake over the next six months through January of 2020 are certain initial and default disclosures, a protective order, a core technical documents production, and initial infringement and invalidity contentions. (*Id.*). Notably, this Scheduling Order contains the following express provision relating to fact discovery: "The parties have previously produced certain initial fact discovery materials to one another in Civil Action No. 17-cv-202-LPS-CJB (the "Related Case"). The parties may use such discovery materials from the Related Case for all purposes in this action as if it had been obtained herein." (*Id.* at ¶ 8).

## B.     The Status Of The Parties' Prior Related Case And Amazon's Related Case IPRs

M2M filed the prior Related Case against Amazon on February 28, 2017. *See* (Related Case at D.I. 1). The Related Case was actively litigated between the parties on an unstayed basis for approximately one year until February 20, 2018. During that time frame, the parties completed the following case-related activities occurring both before and after this Court's denial of Amazon's Section 101 motion to dismiss: **(i)** initial disclosures and default disclosures (*Id.* at D.I. 27, 28, 31, 32); **(ii)** protective order (*Id.* at 30); **(iii)** initial infringement and invalidity contentions (*Id.* at 44, 51); and **(iv)** multiple rounds of party-initiated discovery in the form of document requests and interrogatories. (*Id.* at D.I. 24, 37, 45, 46, 56).

Amazon filed three IPR petitions directed to the Related Case patents on August 8, 2017 - - *viz.*, IPR2017-01891 ('007 patent); IPR2017-01892 ('358 patent); and IPR2017-01893 ('359 patent) (the "Related Case IPRs"). (*See* Related Case at D.I. 61). When those petitions later were

instituted by the PTAB, the parties stipulated to a stay of the Related Case that commenced on February 20, 2018. (*Id*.). After the PTAB eventually issued FWDs finding all claims of the Related Case patents to be unpatentable, the parties stipulated to further extend the stay on February 28, 2019 to allow M2M to pursue Requests for Rehearing. (*Id*. at D.I. 67). Following the PTAB's later denial of those Rehearing Requests, the parties stipulated to extend the stay on June 20, 2019 up through resolution of the Federal Circuit appeals that M2M intends to file. (*Id*. at D.I. 68). Assuming a 12-month appellate process going forward, all told M2M will have experienced stay-related delays of about 30 months in prosecuting the Related Case.

On August 2, 2019, M2M filed notices of appeal to the Federal Circuit of the FWDs issued in the three Related Case IPRs. Among the most significant errors for appeal is the PTAB's adoption and dispositive reliance upon a new claim construction argument improperly raised by Amazon for the first time at the Oral Hearing that directly contradicted the position Amazon had taken at all previous times both in the IPR proceedings and in the Related Case. *See* (Exhs. 1 and 2 to Hensch. Decl.).[2] At the Oral Hearing, Amazon newly argued as to the independent claims that *no relationship* need exist between the claimed "management instructions" and the server's processing of "consumer usage information," whereas its prior position had always been the exact opposite -- *i.e.,* that the "management instructions" are in fact required to be "based upon the results" of such processing. Indeed, that prior position was the one that Amazon had advanced to this Court in the Related Case, and that this Court itself utilized when denying Amazon's Section 101 motion. (*See, e,g*., Related Case at D.I. 49, at 3); *M2M Sols. v. Amazon.com, Inc*., No. 17-202-LPS-CJB, 2017 U.S. Dist. LEXIS 203110, \*\*22 n. 5, 23, 30 (D. Del. Dec. 11, 2017).

---

[2] As used herein, the term "Hensch. Decl." is a reference to the Declaration Of Marc N. Henschke In Opposition To Defendant Amazon.com, Inc.'s Motion To Stay Pending *Inter Partes* Review, filed concurrently herewith under separate cover.

**C.**     **M2M's Addition Of Significant New Limitations To The Claims Of The Patents-In-Suit Designed To Distinguish Over The Arguments And Art Relied Upon In Amazon's Related Case IPRs**

After fully digesting Amazon's Related Case IPR petitions served in August of 2017, M2M filed two new continuation patent applications in October of 2017 and March of 2018 that matured into the '477 and '989 Patents-in-Suit respectively. *Cf.* (Op. Br., p. 5). While those applications remained pending, M2M also studied the PTAB's Institution Decisions that issued in February of 2018. M2M then further clarified its inventions by adding significant new limitations into both the independent and dependent claims of what became the Patents-In-Suit that were expressly designed to distinguish over the arguments and art relied upon in Amazon's Related Case IPRs, and that ultimately became the basis of PTAB's FWDs.

For example, new limitations were added to the independent claims of the '989 patent which completely foreclose Amazon's previous sole reliance on Kloba as ostensibly satisfying the "consumer usage information" claim elements. In the Related Case IPRs, Amazon argued that Kloba discloses two alternative examples of the claimed "consumer usage information." (D.I. 18-1 at Exh. 1, p. 40). <u>First</u>, Amazon argued that when the consumer uses the Fig. 12 interface on the Kloba mobile device to send a request to the remote server to download a new website channel onto the mobile device, that consumer request would qualify as "consumer usage information." (*Id.*). But the independent claims of the '989 patent now recite a new limitation clarifying that the modifications that the server makes to the mobile device by sending the management instructions need to be effectuated by the server **"on an autonomous basis unprompted in whole or in part by the receipt of any request or command initiated by a consumer user of one or more of the plurality of consumer device assets."** (D.I. 18-1 at Exh. 4, at 2). This revised language eliminates any further ability by Amazon to rely upon Kloba's Fig. 12 interface information as being the claimed "consumer usage information."

6

Second, alternatively, Amazon argued that when the consumer uses the Fig. 17 interface on the Kloba mobile device to enable certain local settings, the information sent to the server indicating which settings have been locally enabled would constitute "consumer usage information." (D.I. 18-1 at Exh. 1, at 40). M2M disputed that this type of "local settings enabled" information could qualify as the claimed "consumer usage information" based on uncontested evidence showing that it would be insufficient to identify for the server the "particular" manner in which the consumer had used the mobile device. *See* (Exhs. 3 and 4 to Hensch. Decl.). The PTAB ultimately rejected M2M's position purely on claim construction grounds, holding that "consumer usage information" did not need to identify any "particular usage" of the mobile device by the consumer and could encompass any type of use at all in any unspecified manner. (D.I. 18-1 at Exh. 1, at 22, 41). But the '989 patent now adds in new claim limitations that expressly self-define "consumer usage information" as needing to be information **"identifying the manner in which a consumer user has used a particular feature of the particular sending consumer device asset."** (Id. at Exh. 4, at 2). This language eliminates the claim construction position that the PTAB used as its only basis for rejecting M2M's above arguments regarding Kloba's Fig. 17 embodiment.

The dependent claims of the Patents-In-Suit also incorporate several significant new limitations absent from the Related Case patents that distinguish over the prior art relied upon in Amazon's previous IPR petitions. *See, e.g.,* ('477/'989 patents at claims 9, 16, 19, 27-28) (wireless packet switched data messages containing a unique identifier comprising an identification code specific to the receiving consumer device asset); ('477/'989 patents at claims 11, 29-30) (wireless packet switched data messages that contain management instructions for causing automatic deletion without replacement of display data content files residing on

consumer device asset); ('477/'989 patents at claims 7, 10, 14, 17, 20, 25) (SMS wake-up
messages that cause wireless packet switched data message communications comprising specific
types of management instructions that are based upon a specific type of server processing). (*See*
D.I. 18-1 at Exhs. 3, 4).

During prosecution of the Patents-In-Suit, M2M submitted to the Examiner all of the art
relied upon in Amazon's Related Case IPRs, the PTAB's actual Institution Decisions on those
petitions, and even 235 pages worth of invalidity charts based upon the key Kloba and Multer
IPR references that Amazon had served in the Related Case litigation. (*See* Exhs. 4, 5 to Hensch.
Decl.). The Examiner granted the revised claims of the Patents-In-Suit as patentably distinct over
all of those materials while expressly indicating that he had in fact considered them. (*Id.*).

## IV.   ARGUMENT

### A.   Applicable Legal Standards Governing Stay Requests

A court has discretionary authority to grant a motion to stay. *Advanced Microscopy Inc.
v. Carl Zeiss Microscopy, LLC,* No. 15-516-LPS-CJB, 2016 U.S. Dist. LEXIS 17363, at *2 (D.
Del. Feb. 11, 2016). In exercising such discretion, this Court has typically considered three
factors when deciding a motion to stay: (1) whether granting the stay will simplify the issues for
trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date
has been set; and (3) whether a stay would cause the non-movant to suffer undue prejudice from
any delay, or allow the movant to gain a clear tactical advantage. *Id.* When assessing these
factors, a "movant's failure to articulate a clear hardship that it would suffer in the absence of a
stay…weighs against such relief." *Yodlee, Inc. v. Plaid Techs. Inc.*, No. 14-1445-LPS-CJB, 2017
U.S. Dist. LEXIS 11206, at *3 (Jan. 27, 2017).

Where, as here, this three-factor stay test is being applied to stay requests that are
premised upon *pre-institution* IPR petitions, this Court has observed that "as time has passed

since the new IPR process was instituted, the Court has become less and less sure about the merit of granting a stay in favor of an IPR proceeding, when the PTAB has not even weighed in on whether to institute review." *Advanced Micro.*, 2016 U.S. Dist. LEXIS at \*6*; see also Sirona Dental Sys. GMBH v. Dental Wings, Inc.*, No. 14-460-LPS-CJB, 2016 U.S. Dist. LEXIS 155706, at \*27 (D. Del. Mar. 22, 2016) (same). Indeed, among many other reasons, this Court has recognized that granting stays in favor of *pre-institution* IPR petitions would be in direct tension with Chief Judge Stark's "Revised Procedures for Managing Patent Cases" which prefers that "cases filed by a plaintiff should move forward." *Nuvasive, Inc. v. Neurovision Med. Prods.*, No. 15-286-LPS-CJB, 2015 U.S. Dist. LEXIS 85894 (D. Del. June 23, 2015). Those governing procedures clearly "counsel[] that while waiting for a PTO decision that will impact the merits of the motion to stay, a Scheduling Order should be entered and the case should move forward." *Id.* at \*9.

In keeping with this Court's recognition of the dubious merits of granting a stay request in favor of *pre-institution* IPR petitions, the general policy that courts within this district have consistently followed since at least the mid-2014 time frame is to *deny* any such request without prejudice to a movant's ability to later renew its motion after the PTAB has ultimately issued an institution decision. *See, e.g., Invensas Corp. v. Samsung Elecs. Co.*, No. 17-1363-MN-SRF, 2018 U.S. Dist. LEXIS 169999 (D. Del. Oct. 2, 2018); *Universal Secure Registry, LLC v. Apple Inc.,* No. 17-585-CFC-SRF, 2018 U.S. Dist. LEXIS 159539 (D. Del. Sept. 19, 2018)(same); *Advanced Micro.*, 2016 U.S. Dist. LEXIS 17363 (same); *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.,* No. 15-691-LPS-CJB, 2015 U.S. Dist. LEXIS 162866 (D. Del. Dec. 3, 2015)(same); *Nuvasive*, 2015 U.S. Dist. LEXIS 85894(same); *Copy Prot. LLC v. Netflix, Inc.,* No. 14-365-LPS, 2015 U.S. Dist. LEXIS 78270 (D. Del. June 17, 2015)(same); *Pragmatus*

*Mobile, LLC v. Amazon.com, Inc.,* No. 14-436-LPS, 2015 U.S. Dist. LEXIS 82256 (D. Del. June 17, 2015)(same); *McRo, Inc. v. Bethesda Softworks LLC*, No. 12-1509-LPS-CJB, 2014 U.S. Dist. LEXIS 60313 (D. Del. May 1, 2014)(same).

### 1.    The "Simplification" Stay Factor

In applying the "simplification" factor of the stay test to requests made in favor of *pre-institution* IPR petitions, "[c]ourts within this district have generally held that this factor weighs against a stay when the PTAB has not yet decided whether to institute IPR proceedings." *Invensas*, 2018 U.S. Dist. LEXIS 169999, at *6. As Chief Judge Stark has expressly found on multiple occasions, this factor typically "disfavors a stay" at a time when "the IPR petition has not been instituted." *Copy Prot.*, 2015 U.S. Dist. 78720, at **2-3 ("Generally, the 'simplification' issue does not cut in favor of granting a stay prior to the time the PTAB decides whether to grant the petition for inter partes review."). *Accord Pragmatus*, 2015 U.S. Dist. LEXIS 82256, at **3-4 (same); *Advanced Micro.*, 2016 U.S. Dist. LEXIS 17363, at *8 (same); *Toshiba*, 2015 U.S. Dist. LEXIS 162866, at *9 (same).

The rationale for why staying cases in favor of *pre-institution* IPR petitions is so disfavored is that "[w]ithout any certainty as to whether the PTAB will institute review, the extent to which the issues before the court might be simplified [necessarily] remains unknown." *Universal Sec.Reg.*, 2018 U.S. LEXIS 159539, at *8. Accordingly, "[u]nless and until the PTAB institutes IPR…proceedings based on the petitions, any expected simplification rests on speculation that such institution will occur." *Id.* at *6. In turn, it would be an ill-advised risk for a court to rely upon such speculation to grant a *pre-institution* stay because when it later proves unfounded and "no review is instituted, the asserted basis for a stay will fall away" and the case would need to be restarted. *Advanced Micro.*, 2016 U.S. Dist. LEXIS 17363, at *5. *Accord Toshiba*, 2015 U.S. Dist. LEXIS 162866, at *6; *Nuvasive*, 2015 U.S. Dist. LEXIS 85894, at *6.

10

The end result would be highly inefficient management of the case docket. *See, e.g., Advanced Micro.*, 2016 U.S. Dist. LEXIS 17363, at *7 ("A court's interest in efficiently managing its docket – and in making one good decision at one point when the key data is at hand – can be undermined by that kind of 'start and stop' process."); *Universal Sec. Reg.*, 2018 U.S. Dist. LEXIS 159539, at *8 ("As a practical matter, putting the case on hold [by staying] until the decision to institute is made is likely less efficient than continuing on track through discovery.").

      Rather than relying upon mere speculation to assess "simplification" in the *pre-institution* time frame, this Court has repeatedly held that the wiser course is to wait and "allow for a better more fully developed record as to the 'simplification of issues' factor…[that] will come simply from receiving the PTAB's decision itself." *Advanced Micro.*, 2016 U.S. Dist. LEXIS 17363, at *5. *Accord Toshiba*, 2015 U.S. Dist. LEXIS 162866, at *6; *Nuvasive*, 2015 U.S. Dist. LEXIS 85894, at *6. As this Court has explained, if "the PTAB does institute a review, the Court can [then] examine the grounds upon which the review has been granted…so as to determine the effect that the PTAB's decision could have on simplifying this case." *Advanced Micro.*, 2016 U.S. Dist. LEXIS 17363, at *5; s*ee also Toshiba*, 2015 U.S. Dist. LEXIS 162866 at **7, 10 (examining "the PTAB's institution decision before [reaching] any decision to grant a stay" provides the Court with "the information it needs to make an informed decision" about the "simplification" factor). Moreover, this Court has also found that further clarity can be brought to the record "by allowing some initial discovery to proceed" on an unstayed basis prior to a PTAB institution decision which "would help the Court to better decide whether a stay would simplify the issues for trial." *McRo*, 2014 U.S. Dist. LEXIS 60313, at *12.

      In sum, "[g]iven the circumscribed efficiencies to be gained if the PTAB declines to institute IPR proceedings, consideration of the weight given to the issue simplification factor is

appropriately reserved for a time following the PTAB's decision on whether to institute proceedings." *Invensas*, 2018 U.S. Dist. LEXIS 169999, at **7-8. *Cf. TruePosition, Inc. v. Polaris Wireless, Inc.,* No. 12-646-RGA-MPT, 2013 U.S. Dist. LEXIS 150764, at *17 (D. Del. Oct. 21, 2013) ("Since the inter partes review request is still pending before the PTO…this motion [for a stay] is premature" and must therefore be denied). Whereas the "simplification" cuts against stay requests made in favor of *pre-institution* IPR petitions as here, this "factor may be evaluated differently" for purposes of stays that are requested subsequently on a post-institution basis. *Copy Prot.,* 2015 U.S. Dist. LEXIS 78270, at *3. Indeed, this is broadly true for stay requests in general. *See, e.g., 454 Life Scis. Corp. v. Ion Torrent Sys.*, No. 15-595-LPS, 2016 U.S. Dist. LEXIS 153978, at *12 (D. Del. Nov. 7, 2016) ("[T]he ideal time" to file a motion to stay is "shortly after the PTAB issue[s] its decision to proceed with a validity trial on all of the Asserted Claims.").

### 2.    The "Status Of The Litigation" Stay Factor

Courts within this district have often found as a general matter that the "status of the litigation" factor of the stay test weighs in favor of granting a stay that is requested "in the early stages of litigation." *Sirona*, 2016 U.S. Dist. LEXIS 155706, at **21-22. By granting a stay at a preliminary juncture in a case, it will presumably have the greatest possible impact on curtailing the amount of future activities that would otherwise have had to be conducted over the long remaining lifetime of the matter. In short, the underlying rationale is that entry of a stay in the early stages of litigation will serve to "maximize" the amount of "judicial and litigant resources" that can be conserved and need not be expended. *Id.*

However, as several holdings by this Court indicate, that general approach and its rationale has little if any applicability to a scenario where, as here, a stay is being requested at an early stage of a litigation in favor of *pre-institution* IPR petitions. Because the movant will

12

always be given the opportunity to later renew its stay request after the PTAB has rendered its institution decision, the proper time frame for assessing the purported benefits of the initial request is during that brief interval of six months or less that transpires prior to the institution decision. But for this short interval period, there is no credible basis for finding that a stay would meaningfully "maximize" the conservation of "judicial and litigant resources." *See, e.g, Advanced Micro.*, 2016 U.S. Dist. LEXIS 17363, at **3-4 ("There is good reason to believe that the PTAB's decision will come before the parties have engaged in large-scale expenditure of resources on document production or on claim construction-related activity."); *McRo*, 2014 U.S. Dist. LEXIS 60313, at *11 ("the cabined amount of case-related activity that will have occurred in the interval will not have amounted to a large-scale waste of resources."); *Toshiba*, 2015 U.S. Dist. LEXIS 162866, at **3-4 (same: "relatively small" scope of case activity).[3] Accordingly, this Court has ruled in all of these above-cited cases that denying an early *pre-institution* stay request and allowing a case to proceed "forward with initial discovery will not unduly prejudice Defendant or be unduly harmful to efficient management of these proceedings." *NuVasive*, 2015 U.S. Dist. LEXIS, at *5.

Thus, this Court's prior decisions suggest that the "status of the litigation" factor should at most be accorded very minimal weight in the overall balancing test as support for granting a stay requested at an early stage of a litigation in favor of *pre-institution* IPR petitions. Moreover, other courts within this jurisdiction have gone so far as to explicitly hold that the "second factor regarding the status of the case…[actually] weighs against a stay" where it "remains likely that the PTAB's institution decision will precede large-scale and expensive discovery efforts related

---

[3] In scenarios where the amount of case-related activities that the parties need to conduct during this interval time period is even further reduced owing to a stipulated agreement that would allow them to borrow and "reuse discovery" from another related litigation, there is even greater reason to conclude that "staying the action for several months until the PTAB renders its institution decision…would not conserve significant resources." *Invensas*, 2018 U.S. Dist. LEXIS 169999 at *10.

to document production or claim construction." *Universal Sec. Reg.*, 2018 U.S. Dist. LEXIS 159539, at **9-10.

### 3.    The "Undue Prejudice" Stay Factor

In assessing the "undue prejudice" factor of the stay test, courts will consider four sub factors: "(1) the timing of the request for review; (2) the timing of the request for a stay; (3) the status of the review proceedings; and (4) the relationship of the parties." *Ethicon LLC v. Intuitive Surgical, Inc.*, No. 17-871-LPS, 2019 U.S. LEXIS 45452, at *6 (D. Del. Mar. 20, 2019).

This Court has found that where a stay is requested in favor of potentially lengthy IPR proceedings, the resulting prejudice to the non-movant under the "status of the review proceedings" sub factor of the "undue prejudice" analysis can carry enough weight to offset the other three sub factors combined. *See, e,g., Princeton Digital Image Corp. v. Konami Digital Entm't Inc*., No. 12-1461-LPS-CJB, 2015 U.S. Dist. LEXIS 4234, at *12 (D. Del. Jan. 14, 2015)( "the Court determines that the 'undue prejudice' factor has become neutral" based upon the "status of the review proceedings" sub factor alone favoring the non-movant). Indeed, "[S]taying a case pending PTO review risks prolonging the final resolution of the dispute and thereby may result in some inherent prejudice to the plaintiff." *Copy Prot.*, 2015 U.S. Dist. LEXIS 78270, at *2 (internal quotation marks and citation omitted). The longer the PTO review proceedings may last, the more acute and dispositive the prejudice to the non-movant becomes. *See, e.g., Sirona*, 2016 U.S. Dist. LEXIS 155706, at *32 (IPRs that "would likely push back the resolution of this case by at least eight more months…weigh against granting a stay."). Thus, prejudice would be at its greatest occurs where, as here, a stay is requested in favor of *pre-institution* IPR proceedings that have their entire lifetimes remaining. *Princeton Digital Image Corp. v. Konami Digital Entm't, Inc*., No. 12-1461-LPS-CJB, 2014 U.S. Dist. LEXIS 61555, at *20 (D. Del. Jan. 15, 2014) ("in light of the early stage of the review proceedings here -- with the PTO not yet

determined whether to grant review – the length of the expected delay increases the risk of prejudice to Plaintiff…[and] weighs against granting a stay.").[4]

With respect to the "timing of the request for review" sub factor of the "undue prejudice" analysis, a movant's "delay in petitioning for IPR" until relatively late within the one-year statutory filing period "could create at least some tactical disadvantage" for the non-moving party such that a "stay may unduly prejudice" the non-movant. *Copy Prot.*, 2015 U.S. Dist. LEXIS 78270, at *2. *Accord Pragmatus*, 2015 U.S. Dist. LEXIS 82256, at *3. Moreover, where the record confirms that movants "were aware of the prior art asserted in their IPR petition many months before filing the petition," this affirmatively "suggests they may be seeking a[n] [improper and prejudicial] tactical advantage" based upon the timing of their request for review. *Pragmatus,* 2015 U.S. Dist. LEXIS 82256, at *3.

### B. The Court Should Deny The Present Motion In Its Entirety Because Amazon Has Failed To Demonstrate That An Equitable Balancing Of The Stay Test Factors Would Support The Granting Of A Stay In Favor Of Its *Pre-Institution* IPR Petitions

As detailed below, for all the same reasons that it has been the general policy over the past five years for courts within this jurisdiction to deny stay requests made in favor of *pre-institution* IPR petitions, here Amazon has failed to demonstrate that an equitable balancing of the stay test factors would support the present granting of a stay in favor of its own *pre-institution* '477/'989 IPRs. (*See, supra*, at 9-10) (*citing Invensas; Universal Sec. Reg.; Advanced Micro.; Toshiba; Nuvasive; Copy Prot.; Pragmatus; McRo*).

---

[4] In addition, courts have found that prejudice is further heightened by stay requests made where the non-movant has already been required to endure previously imposed stays that delayed its ability to assert the same or related patents. *See, e.g., Elm 3DS Innovations, LLC v. Samsung Elecs. Co*., No. 14-1430-LPS-CJB, 2018 U.S. Dist. LEXIS 30209, at **6-7 (D. Del. Feb. 26, 2018); *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc*., 193 F. Supp. 3d 345, 352 (D. Del. 2016).

15

### 1. Amazon Has Failed To Show That That The "Simplification" Stay Factor Supports Granting A Stay In Favor Of Its *Pre-Institution* IPR Petitions

This Court has consistently held that the "simplification" test factor weighs against the granting of stay requests made, as Amazon does here, in favor of *pre-institution* IPR petitions. (*See, supra*, at 10) (*citing Advanced Micro.; Toshiba; Copy Prot.; Pragmatus*). Prior to institution, any ostensible simplification benefits would rest purely on the movant's speculative assertions that such institution will occur, and should that speculation later prove unfounded a court will have engaged in a highly inefficient "start and stop" management of its case docket. (*Id.* at pp. 10-11)(*citing Universal Sec. Reg.; Advanced Micro.; Toshiba; Nuvasive*). Rather than relying on premature speculation, the wiser course followed by this Court has been to wait until later to assess simplification from a more fully developed record that would include the PTAB's actual institution decision and potentially some useful initial discovery. (*Id.* at p. 11)(*citing Advanced Micro.; Toshiba; Nuvasive; McRo*).

Against the great weight of this authority, Amazon now principally argues that the Court should treat its speculative assertion that "it is highly likely that the Board will institute the '477/'989 IPRs" as a *non-speculative* matter of certainty for purposes of assessing simplification. (Op. Br., at 10, 2, 13).[5] As Amazon would have it, the claims of the Patents-In-Suit are "nearly identical" to those of the Related Case patents such that "no material difference" exists between them "with respect to invalidity" issues. (*Id.* at 2-3, 8). Accordingly, Amazon has purportedly drafted its new '477/'989 IPRs to be facsimiles of its previous Related Case IPRs that "set forth

---

[5] The only purportedly "analogous" precedent that Amazon cites for this novel legal proposition is *Princeton Digital*, but it is clear that any such reliance is badly misplaced. (Op. Br., at 10). In that case, the likelihood of institution was deemed sufficiently non-speculative based on statistical evidence unique to a bygone era showing that "review has been granted in nearly all of the IPR review petitions on which the PTO issued decisions through at least mid-2013." 2014 U.S. Dist. LEXIS 61555, at *9 n. 5. But as subsequent holdings by this Court have suggested, *Princeton Digital's* rationale is no longer applicable in this new era where the PTAB's institution rate has very significantly declined. *See Toshiba*, 2015 U.S, Dist. LEXIS 162866, at *7 n. 3; *Nuvasive*, 2015 U.S. Dist. LEXIS 85894 at *6 n. 3.

invalidity grounds based on the same Kloba and Multer prior art that the Board relied upon in invalidating the Related Case patents," ostensibly making it inevitable that the PTAB will institute the '477/'989 IPRs by adopting the same reasoning as before. (*Id.* at 7, 10). Apparently counting on persuading the Court that institution is a foregone conclusion, all of the simplification benefits that Amazon attributes to its requested stay could potentially arise *only* in situations where the PTAB had already decided to institute the subject IPR petitions (*e.g.*, "estoppel, claim construction, insight into the Board's invalidity analysis"). (*Id.* at 2-3, 8, 11).

But on a substantive basis, Amazon's argument that institution of the new IPR petitions should be treated as a non-speculative certainty must fail because its foundational premise that the claims of the Patents-In-Suit are materially identical to those of the Related Case patents for invalidity purposes is demonstrably false. As M2M has shown above, for example, significant new limitations pertaining to "consumer usage information" have been added into the independent claims of the '989 patent which successfully distinguish over the Kloba prior art and arguments that Amazon previously relied upon in the Related Case IPRs. (*Supra*, at 6-7). In its motion papers, Amazon seeks to mislead this Court by contending that "Kloba readily discloses" these new '989 limitations pursuant to the same "Kloba-based rationale that the Board already has applied in the Related Case IPRs." (Op. Br., at 9) (*citing* Kloba at 16:64-17:1). As Amazon is well aware, however, it never in fact relied upon that cited Kloba passage anywhere in the Related Case IPRs, nor did the PTAB ever rule upon it. Equally untrue -- and belied by the specific examples that M2M has provided above -- is Amazon's assertion that the dependent claims of the Patents-In-Suit contain no new limitations and merely recombine preexisting limitations "from dependent '358 claims that the Board has already found invalid." (*Compare Id.* at 3 *with supra*, at 7-8). These attempts by Amazon exploit this Court's lack of familiarity with

17

the IPR record counsels for exactly why it would be wise to await clarity from the PTAB's actual institution decision before assessing the "simplification" test factor.

Amazon's speculation about the ostensible certainty of institution also fails on procedural grounds in view of the PTAB's greatly increased willingness of late to discretionarily deny institutions under 35 U.S.C. §§ 314(a) and 325(d). Under § 314(a), institutions of new IPR petitions are now being routinely denied where they present overlapping issues, arguments, and art to those which the PTAB already previously considered in earlier IPRs.[6] Here, Amazon is claiming that its new '477/'989 IPRs are outright facsimiles of its previous Related Case IPRs, which are also the subject of a pending Federal Circuit appeal. (*Supra*, p. 5). Moreover, per § 325(d), the PTAB has been aggressively denying institution of petitions of late that are based on art that was already before the Examiner during patent prosecution[7], which is precisely the situation here where the Patents-In-Suit were granted over all of Amazon's submitted art and arguments from the Related Case IPRs. (*Id*., at 8). If anything, these latest trends in the PTAB make it *less* likely than on average that Amazon's new '477/'989 IPRs will get instituted.

Finally, Amazon's certainty of institution argument also fails for overlooking the fact that its '477/'989 IPRs will now be newly subject to the *Phillips* claim construction standard which may be of dispositive significance to the PTAB's review decision, particularly given that Amazon previously asserted in this Court the exact opposite construction for the "management instructions" claim elements to the one that it now relies upon for its invalidity arguments in the new petitions. (*Supra*, at 5). *See* 37 C.F.R. § 42.100(b), 83 Fed. Reg. 51,340 (Oct. 11, 2018).

---

[6] *See, e.g.*, PTAB Trial Practice Guide Update ("PTAB TPG")(July 2019), II.D.2 at 22-38; *Expedia, Inc. et al., v. IBM Corp.,* 2019 Pat. App. LEXIS 4307, at *15-19, Case IPR2019-00404 (PTAB June 25, 2019)(Paper No. 8).

[7] *See, e.g.*, PTAB TPG, II.D.2 at 28-31; *R.J. Reynolds Vapor Co. v. Fontem Holdings, BV,* 2018 Pat. App. LEXIS 5759, at *16-19, Case IPR2017-01642 (PTAB Jan. 16, 2018)(Paper No. 10).

2.      **Amazon Has Failed To Show That The "Status Of The Litigation"**
**Stay Factor Supports Granting A Stay In Favor of Its *Pre-Institution***
**IPR Petitions**

In its moving papers, Amazon's analysis of the "status of the litigation" factor goes no farther than to invoke the general principle that this factor will often weigh in favor of granting stays requested in the early stages of litigation insofar as they would "maximize" the conservation of large-scale resources that would otherwise need to be expended on "most of the significant case events." (Op. Br., at 12). But this general principle has little or no applicability where, as here, Amazon is requesting a stay in favor of *pre-institution* IPR petitions that may effectively last for just the next six months until January 2020 when the PTAB will render its institution decisions and the stay issue can be revisited. As M2M has shown, the reality is that the parties are obligated to expend only *de minimis* resources during this brief interval period, with required case activities limited to initial and default disclosures, a protective order, a core technical document production, and initial infringement and invalidity contentions. (*Supra*, at 4). Moreover, here the parties should face especially light lifting given their stipulated agreement that allows for reusing discovery previously exchanged in the Related Case, not to mention that their prior contentions could presumably be repurposed here as well if Amazon is right in suggesting that the Patents-In-Suit are "nearly identical" to the Related Case patents. (*Id.*; *see also* s*upra*, at 13  n. 3 ) (*citing Invensas*). Under these circumstances, this Court's prior holdings suggest that the "status of the litigation" factor should be accorded minimal if any weight in the overall balancing test as support for a *pre-institution* stay request. (*Id.* at 13-14 (*citing Advanced Micro.; McRo; Toshiba; Nuvasive*)). Moreover, other Delaware courts have found that this factor should outright weigh *against* stay requests made in the present situation. (*Id.* (*citing Universal Sec. Reg.*)).

19

### 3. Has Failed To Show That The "Undue Prejudice" Stay Factor Supports Granting A Stay In Favor Of Its *Pre-Institution* IPR Petitions

Under the "status of the proceedings" sub factor of the "undue prejudice" analysis, prejudice to a non-movant like M2M is most acute when stays are requested in favor of *pre-institution* petitions that would last for the entire lifetime of the IPR proceedings. (*Supra*, at 14 (*citing Princeton Digital*, 2014 U.S. Dist. LEXIS 61555). That is precisely the situation here where Amazon is effectively seeking to stay this action for 18 to 24 months or more. (*Id.*, at 3-4). Moreover, such undue prejudice is even further exacerbated by M2M already having to endure 30 months-worth of stays in prosecuting the Related Case. (*Id.*, at 5, 15 n. 4 (*citing Elm 3DS*; *Toshiba*)). The Court has found that such prejudice to the non-movant under this sub factor can weigh heavily enough to offset all of the other "undue prejudice" sub factors combined. (*Id.*, at 14 (*citing Princeton Digital*, 2015 U.S. Dist. LEXIS 4234)).

Amazon's nine-month delay in filing its '477/'989 IPRs further weighs against granting its present stay request under the "timing of request for review" sub factor, especially given that it clearly was fully aware of the asserted prior art for that whole time period by virtue of its earlier Related Case IPRs. (*Supra*, at 15)(*citing Copy Prot.; Pragmatus*).

Finally, Amazon has failed to articulate a clear hardship that it would suffer in the absence of its requested stay which weighs against such relief. (*Supra*, at 8 (*citing Yodlee*; cf. *Id.*, at 13 (*citing Advanced Micro.; Toshiba; Nuvasive; McRo*) (finding no undue prejudice to movant from denials of *pre-institution* stay requests)).

## V. CONCLUSION

For at least the foregoing reasons, M2M respectfully requests that the Court deny in its entirety Amazon's present motion to prematurely stay this action in favor of its recently filed *pre-institution* '477/'989 IPRs.

August 7, 2019

OF COUNSEL:

Marc N. Henschke
CANTOR COLBURN LLP
20 Church Street, 22nd Floor
Hartford, Connecticut 06103-3027
(860) 286-2929
MHenschke@cantorcolburn.com

BAYARD, P.A.

/s/ Stephen B. Brauerman (No. 4952)
Stephen B. Brauerman (No. 4952)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com

Attorneys for Plaintiff
M2M SOLUTIONS LLC

21